IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. _____

| | |
|---|---|
| CARL WAYNE CARPENTER JR.; and<br><br>NATISHA CARPENTER,<br><br>              Plaintiffs,<br><br>vs.<br><br>INVESTIGATOR SCOTT EDWARD REED;<br>Statesville Police Department;<br><br>OFFICER CHARLES KURFEES,<br>Statesville Police Department;<br><br>CITY OF STATESVILLE,<br>A North Carolina Municipality;<br><br>COUNTY OF IREDELL,<br>A Political Subdivision of North Carolina; and<br><br>TOM ANDERSON,<br>Chief of Police, Statesville Police Department,<br>              Defendants. | **COMPLAINT**<br>[JURY TRIAL DEMANDED] |

      **COMES NOW,** Plaintiffs Carl Wayne Carpenter, Jr. and Natisha Carpenter, by and through his undersigned attorney, and for his complaint against the Defendants, alleges and says as follows:

**PREFACE**

      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and North Carolina common law seeking damages against Defendants for committing acts under

color of law that deprived Plaintiffs of rights secured by the Constitution of the United States of America.

## PARTIES AND JURISDICTION

1. This cause of action arises in Statesville, Iredell County, North Carolina.

2. At all times relevant to this action, Carl Wayne Carpenter, Jr. (hereinafter "Carl") and Natisha Carpenter (hereinafter "Natisha") (hereinafter collectively "Plaintiffs") were citizens and residents of Statesville, Iredell County, North Carolina.

3. Defendant City of Statesville (hereinafter "City") was and is a municipal corporation located in Iredell County, North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat. § 160A-11, and vested with corporate powers and rights as specified in N.C. Gen. Stat. § 160A-11, including, but not limited to, the capacity to sue and be sued. At all times relevant to this action, City acted through its managers and policy makers, including the Chief of Police and other employees of the Statesville Police Department (hereinafter "Statesville PD"); and the acts, edicts, and practices of said persons represent the official policies of City.

4. Defendant County of Iredell (hereinafter "County"), was and is a political subdivision and county of the State of North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat. § 153A-10, and vested with corporate powers and rights as specified in N.C. Gen. Stat. § 153A-11 including, but not limited to, the capacity to sue and be sued. At all times relevant to this action, County acted through its managers and policy makers, including the Chief of Police and other employees of the Statesville Police Department; and the acts, edicts, and practices of said persons represent the official policies of County.

5. Upon information and belief, to the extent that any and/or all of the Defendants in this action claim they are a municipal and/or governmental and/or City and/or County owned, operated, and/or funded entity or an employee and/or agent of any such entity such Defendants do not have governmental immunity and/or sovereign immunity for any of the acts or omissions descried herein. In the alternative, should any and/or all of the Defendants in this action have governmental immunity and/or sovereign immunity to which they may have been otherwise entitled, for themselves, their agents, employees and all officials acting in their official (and, if applicable, individual) capacities for civil liability and tort by the act of purchasing (or otherwise procuring, obtaining and/or having in place) liability insurance (or the functional and substantive equivalent thereof, i.e., participation in a local governmental risk pool, etc.) prior to, concurrent with, and/or subsequent to and/or applicable to the acts and omissions alleged herein.

6. Upon information and belief, both City and County were and are participants in local governmental risk pools or the functional and substantive equivalent thereof, at all times applicable to the events that are the subject of this action.

7. Subject matter jurisdiction is, therefore, appropriate and proper and any and all such governmental immunity and sovereign immunity is and has been fully waived pursuant to N.C. Gen. Stat. § 160A-485 and/or N.C. Gen. Stat. § 153A-435.

8. Upon information and belief, at all times relevant to this action the Defendants, Investigator Scott Edward Reed and Officer Charles Kurfees (hereinafter collectively "Officers"), were adults and citizens and residents of Statesville, Iredell County, North Carolina. They are sued in their individual and official capacities for compensatory and punitive damages under both state and federal law.

9. Upon information and belief, at all times relevant to this action Defendant Chief Tom Anderson (hereinafter "Anderson"), was an adult citizen and resident of Statesville, Iredell County, North Carolina. He is sued in his official capacity as Chief of the Statesville Police Department under both state and federal law.

10. The federal claims in this suit are authorized by 42 U.S.C. § 1983 (allowing suit to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense awards).

11. This case also arises under the common law of North Carolina.

12. Plaintiff resides in Iredell County, North Carolina and all of the acts alleged herein occurred within that county; therefor, venue is proper in the United States District Court in the Western District of North Carolina.

## ACTUAL AND/OR APPARENT AUTHORITY

13. At all times relevant to the allegations alleged in this Complaint, Officers, were employed by County and/or City as a law enforcement officers, and were acting at all relevant times as an agent of County and/or City within the course and scope of their duties as a sworn officers and under color of laws, statutes, regulations, customs, practices and usage of the City of Statesville, County of Iredell, and State of North Carolina. They are sued in his individual and official capacities for compensatory and punitive damages.

14. At all times relevant to the allegations alleged in this Complaint, Anderson was employed by Defendant City and/or Defendant County as a law enforcement officer and Chief of Police, and was acting at all times as an agent of City and/or County

within the course and scope of his duties as a sworn officer and under the color of laws, statutes, regulations, customs, practices and usage of the City of Statesville, County of Iredell, and State of North Carolina. He is sued in his official capacity for compensatory damages under both State and Federal laws.

15. Defendant City, County, and Anderson had the right and/or power to direct and control the manner in which its/their employees and/or agents executed their official duties.

16. The grossly negligent acts, omissions and liability of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, actual authority, apparent authority, actual agency, ostensible agency and/or *respondeat superior* and the acts and/or omissions of the above named Defendants were a direct and proximate cause of the injuries, damages and losses sustained by the Plaintiff.

## JOINT AND SEVERAL LIABILITY

17. The above-named Defendants are jointly and severally liable for all damages alleged herein since their negligent, grossly negligent, reckless and wonton acts and omissions, singularly or in combination, are a direct and proximate cause of Plaintiff's damages, injuries and losses.

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

18. At all times relevant to this action, Plaintiff is an adult citizen of the United States of America residing in Statesville, Iredell County, North Carolina, entitled to exercise all of the rights and privileges provided by the Constitutions of the State of North Carolina and the United States of America, including the Fourth and Fourteenth Amendments thereto.

19. Carl and Natisha have been married since 1997.

20. Carl and Natisha have four children together:

    a. A.C.(1), born 1998;

    b. A.C.(2), born 2003;

    c. A.C.(3), born 2004; and

    d. A.C.(4), born 2005.

21. Carl is the stepfather to J.C., born 1996, who is the son of Natisha and Rainey Carpenter.

22. A.C.(1), A.C.(2), A.C.(3), A.C.(4) and J.C. (hereinafter collectively "minor children") had been living with Carl and Natisha at 2023 Cline Street, Statesville, North Carolina, up until February 3, 2011 when allegations of child abuse were made.

23. On or about December 6, 2010, J.C. made allegations that Carl beat him with a belt.

24. On or about December 8, 2010, Iredell County Department of Social Services (hereinafter "DSS") and Child Welfare Services investigated the incident, interviewed the family members, and drafted a report.

25. On or about January 7, 2011, following investigation of the December 6, 2010 abuse and neglect report, the DSS social worker Cynthia McCoy (hereinafter "McCoy") and supervisor found no evidence of neglect and determined the case was unsubstantiated.

26. On January 12, 2011, the DSS social worker called Carl and Natisha to inform them that their investigation into the neglect allegations was finished and that the case was closed due to no evidence of neglect found.

27. On or about February 3, 2011, J.C. reported that Carl punched him in the head with a closed fist, threw him to the ground and kicked him in the head and ribs.

28. On February 3, 2011, DSS received another Child Protective Services Report alleging neglect of the minor children.

29. On February 3, 2011, J.C. had expressed fear of Carl and told DSS that he was scared to go home.

30. McCoy of DSS investigated the reports and allegations made by J.C..

31. Investigator Scott Edward Reed and Officer Charles Kurfees of the Statesville PD also investigated the reports and allegations made by J.C..

32. On or about February 3, 2011, Officer Charles Kurfees noted a bruise on J.C.'s right thigh, a knot on the right side of his head, and an area of redness on the right side of his back with scratches. Officer Charles Kurfees took pictures of what he described as bruising and redness on J.C.'s body.

33. Upon information and belief, the pictures that Officer Charles Kurfees took indicated no signs of bruising or redness, and that there was, in fact, no bruising or redness.

34. On February 4, 2011, a warrant for arrest was issued against Carl for intentional child abuse causing severe physical injury, alleging that on December 7, 2011 Carl hit J.C. with a dog chain, choked J.C. with a dog chain, caused J.C. to sustain scratches and marks on his body, and cutting off J.C.'s airway.

35. The February 4, 2011 warrant for arrest was issued even though a thorough DSS report concluded that the allegations of abuse were unsubstantiated and that there was no evidence of neglect.

36. On or about February 4, 2011, Investigator Scott Edward Reed came to the Carepenter's home around 9:00 a.m. and told Natisha that she needs to "get her ass" to his office.

37. Natisha drove to Investigator Scott Edward Reed's office at the Statesville PD and Investigator Scott Edward Reed proceeded perform a voice analyzer test on Natisha.

38. According to Investigator Scott Edward Reed, the voice analyzer was supposed to be used to determine if Natisha was lying when asked questions.

39. The voice analyzer was comprised of a single wire in which Natisha was to speak in to.

40. Investigator Scott Edward Reed questioned Natisha about the alleged abuse of J.C.; Natisha denied the abuse.

41. Investigator Scott Edward Reed told Natisha that the voice analyzer showed that she was lying.

42. After the voice analyzer interview was over, Investigator Scott Edward Reed allowed Natisha to return home.

43. Later that day, February 4, 2011, Investigator Scott Edward Reed returned to the Carpenter's house and requested that both Carl and Natisha come to the Statesville PD.

44. Investigator Scott Edward Reed interviewed Carl about hitting the children, and when Carl denied the abuse allegations, Scott Edward Reed told him that he was "fucking lying."

45.   Then, Investigator Scott Edward Reed went to another room with Natisha and said that Carl is locked up and that he will be lucky if he gets to see the light of day.

46.   Investigator Scott Edward Reed told Natisha that she has three days to get him a list of all of the things Carl has done to the children or that she would be arrested, too.

47.   Carl was arrested on February 4, 2011 and was given a $25,000.00 secured bond.

48.   On or about Tuesday, February 8, 2011, Natisha attended a meeting at DSS in order to arrange a time to meet with J.C. and give him clothes. Present at this meeting was Officer Kurfees and McCoy.

49.   At the meeting Officer Kurfees told everyone that Natisha had failed a voice analyzer test.

50.   Officer Kurfees also told Natisha that Investigator Scott Edward Reed was sick on Monday February 7, 2011, otherwise he would have arrested her.

51.   Additionally during this meeting, Natisha demanded to see the pictures that Officer Kurfees took purporting to show bruises and redness on J.C.'s body.

52.   McCoy told Natisha that she had looked at the pictures and that the pictures did not show any evidence of abuse.

53.   Natisha was given the opportunity to view the pictures and also saw no bruises, redness, or other signs of abuse.

54.   Natisha asked McCoy and Officer Kurfees if they have taken J.C. to a hospital and they told her that they had not.

55.   On or about February 9, 2011 a warrant for arrest was issued against Carl for intentional child abuse causing severe physical injury and assault by strangulation based on an incident from December 6, 2010 through January 7, 2011 as well as an intentional child abuse causing severe physical injury based on an incident on January 31, 2011.

56.   Carl was arrested on or about February 9, 2011 and was given a $15,000.00 secured bond for these charges.

57. On or about February 9, 2011, Natisha was arrested by the Statesville PD and charged with misdemeanor child abuse.

58. Upon information and belief, the criminal charges levied against Carl and Natisha lacked probable cause, as the only information relied upon in making the charges was 15 year-old J.C.'s unsubstantiated reports of abuse.

59. The investigation performed by DSS and the Statesville PD was negligent and grossly inadequate. Had DSS and Iredell PD performed an adequate investigation, they would have revealed that the allegations levied by J.C. were not credible and neither Carl nor Natisha would not have been arrested. This information that would have been revealed by an adequate investigation includes but is not limited to:

   a. J.C. has had behavioral issues in school, has been suspended multiple times, and has been kicked out of school multiple times.

   b. During the 2010-2011 school year, J.C. was written up twenty-eight (28) times for inappropriate behavior. Such behavior necessitated ten (10) day out-of-school suspensions, in-school suspensions, being sent home early, restriction of school privileges, and administrative conferences with parents.

   c. In 2009, J.C. has a Person-Centered Plan (PCP) completed by the North Carolina Division of Mental Health, Developmental Disabilities and Substance Abuse Services, which stated "Josh doesn't accept responsibility, lies, and blames others." In 2010 his PCP stated "Client is still lying, blaming others, and making excuses for his behaviors."

   d. The Carpenter children have a history of making unsubstantiated claims of abuse to DSS and manipulating the system for person gain and parental vengeance.

      i. On September 19, 2007, DSS received a report that Carl had abused J.C. by breaking his arm. Upon information and belief, J.C. broke his arm by playing football and falling in a hole. DSS determined this allegation of abuse was unsubstantiated.

      ii. On June 1, 2010, DSS received a report that Carl and Natisha hit A.C.(1) with a belt and caused bruises on her body. Upon information and belief, any bruises A.C.(1) may have had, came from riding a four wheeler. DSS determined this allegation of abuse was unsubstantiated.

      iii. On December 6, 2010, DSS received a report that Carl hit J.C. with a belt causing bruises on his body. DSS determined this allegation of abuse was unsubstantiated.

  e. Following the December 6, 2010 allegation of abuse, DSS did not see any bruises on J.C.'s body and J.C. told DSS that he was spanked.

  f. On February 3, 2011, in response to the abuse allegations, A.C.(2) stated that J.C. came home Monday or Tuesday (January 31 or February 1, 2011) and said he had a fight with his friend Nick and that he blamed the bruises on Carl and that Carl was not home.

  g. Upon information and belief, prior to the February 3, 2011 allegations, J.C. had told multiple people that he wanted to live in a group home.

  h. Upon information and belief, J.C. and his sister A.C.(1) have knowingly abused the DSS system, have threatened to report their parents of abuse as a form of leverage, and have fabricated multiple reports of neglect or abuse as detailed above.

  i. Although J.C. claimed that Carl had strangled him with a dog collar, there was no evidence of injury to his neck, including rash, bruises, or other red marks.

  j. Subsequent to J.C.'s initial report, he has recanted his allegations of abuse.

  k. Plaintiff has not abused J.C. and has continued to deny such neglect and abuse.

60. On or about February 24, 2011, Carl took a polygraph administered by Behavior Testing & Forensics, which determined that Carl was telling the truth when he stated that he did not choke, strangle, or brutalize J.C..

61. J.C. was never brought to a hospital for treatment of his alleged wounds or further investigation of physical abuse until on or about April 5, 2011, when J.C. was taken to Baptist Hospital. During this medical examination, no evidence of physical abuse was discovered.

62. All of the charges levied against Carl and Natisha were dismissed by the Iredell County District Attorney's Office on July 26, 2011.

63. As a direct and proximate result of the said acts and omissions of Defendants, Carl suffered the following injuries and damages, including but not limited to:

    a. Violation of their constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person;

    b. Loss of physical liberty;

    c. Emotional trauma and suffering;

    d. Humiliation;

    e. Loss of potential employment and income;

    f. Loss of reputation; and

    g. Expenditure of money in order to hire an attorney for criminal defense.

### COUNT I :: VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

64. All of the foregoing paragraphs are incorporated fully herein by this reference as if fully set forth.

65. Plaintiffs claim damages for the injuries set forth above under 42 U.S.C. § 1983 against the individual defendants for violation of their constitutional rights under color of law.

66. Plaintiffs were arrested and his person seized by Investigator Scott Edward Reed acting under color of law, without necessary probable cause, in violation of his Fourth and Fourteenth Amendment to the United States Constitution right to be free from unreasonable search and seizure.

67. Because of Defendants' actions, Plaintiffs were falsely arrested an imprisoned in violation of their Fourth and Fourteenth Amendment rights.

68. Prior to February 3, 2011, the City of Statesville and County of Iredell, North Carolina developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Statesville, North Carolina, which caused the violations of Plaintiffs' rights.

69.     It was the policy and/or custom of the City of Statesville and/or County of Iredell to inadequately and improperly search, detain, and arrest citizens when lacking probable or reasonable cause to do so; these acts of misconduct were tolerated by the City of Statesville.

70.     It was the policy and/or custom of the City of Statesville and/or County of Iredell to inadequately supervise and train its police officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

71.     The City of Statesville and/or County of Iredell did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

72.     As a result of the above described policies and customs, police officers of the City of Statesville and/or County of Iredell believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

73.     The above described policies and customs demonstrate a deliberate indifference on the part of policymakers of the City of Statesville and/or County of Iredell to the constitutional rights of persons within the City of Statesville, and were the cause of the violations of Plaintiffs' rights alleged herein.

74.     Plaintiffs are entitled to recover reasonable attorney fees as the result of Defendants' violations of Plaintiffs' rights guaranteed by 42 U.S.C. § 1983.

### COUNT II :: FALSE ARREST AND ILLEGAL IMPRISONMENT PURSUANT TO NORTH CAROLINA COMMON LAW
[As to All Defendants]

75.     All of the foregoing paragraphs are incorporated fully herein by this reference as if fully set forth.

76.     The individual defendants illegally arrested and illegally imprisoned Plaintiffs against their will.

77.     As a result of this false arrest and illegal imprisonment, the Plaintiffs suffered the damages as aforesaid.

78.     No probable cause existed for Plaintiffs' arrest and imprisonment.

79.     Defendant City of Statesville is liable for the damages sought by this Count pursuant to the doctrine of *respondeat superior*.

80. Defendant City of Statesville is liable for the damages sought by this Count because the constitutional violation was caused by the Town's policies and customs.

### COUNT III :: NEGLIGENT HIRING, RETENTION AND SUPERVISION PURSUANT TO NORTH CAROLINA COMMON LAW
[As to Tom Anderson and City of Statesville]

81. All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

82. Investigator Scott Edward Reed and Officer Kurfees and the Statesville PD were at least negligent in the investigation and arrest of Plaintiffs.

83. Officer Edward Scott Reed and Officer Kurfees' incompetency may be inferred by his inherent unfitness or previous acts of negligence.

84. Tom Anderson, as Chief of Police had actual or constructive notice of Investigator Scott Edward Reed and Officer Kurfees' incompetency.

85. The injury for which Plaintiff suffered resulted from Investigator Scott Edward Reed and Officer Kurfees' incompetency.

### COUNT IV :: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86. All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

87. The conduct of Defendants was extreme and outrageous and exceeded all bounds usually tolerated by decent society.

88. Defendants' conduct was intended to cause, or was reckless in regard to the likelihood of causing Plaintiff severe emotional distress.

89. Defendants' conduct did in fact cause Plaintiffs severe emotional distress.

90. As a result of the conduct of Defendants, Plaintiffs suffered emotional distress that no reasonable person could be expected to endure in that Plaintiffs suffered harm to his emotional and psychological wellbeing resulting from the physical impact of their unlawful arrest by Defendants.

91.   The torts and negligent actions of Defendant Officers are further imputed to the City and County pursuant to the doctrine of *respondeat superior*. At all times relevant to this action, Defendant Officers were acting within the course and scope of their agency and employment with the City and/or County.

### COUNT V :: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
[Alternative to Count IV]

92.   All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

93.   Conduct of Defendants as alleged hereinabove, breached their duty of care owed to Plaintiffs and proximately caused Plaintiffs to experience severe emotional distress.

94.   Defendants could reasonably foresee that their negligent conduct would cause Plaintiffs to suffer severe emotional distress.

95.   Defendants' conduct proximately caused Plaintiffs to experience severe emotional distress as the result of the public humiliation and in the course of Defendants' and unlawful arrest.

96.   As a result of the conduct of Defendants, Plaintiffs suffered emotional distress that no reasonable person could be expected to endure in that Plaintiffs suffered harm to their emotional and psychological wellbeing.

97.   The torts and negligent actions of Defendant Officers are further imputed to the City and County pursuant to the doctrine of *respondeat superior*. At all times relevant to this action, Defendant Officers were acting within the course and scope of their agency and employment with the City and/or County.

### COUNT VI :: PUNITIVE DAMAGES PURSUANT TO N.C.G.S. §1D

98.   All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

99.   Defendants knew or reasonably should have known that they committed the tortious individual and official actions alleged herein with malice and reckless or callous indifference to the Plaintiffs' civil rights.

100.  The Defendant City knew or reasonably should have known that Defendant Officers were inherently unfit to serve as public officers. The negligent hiring and

retention of Defendant Officers by the City constituted a malicious, wanton, and willful indifference to the rights and safety of the Plaintiffs and all citizens similarly situated in Iredell County.

101. Pursuant to N.C. Gen. Stat. §1D, Plaintiffs are entitled to recover punitive damages from Defendants, jointly and severally, in an amount to be determined by jury, but not less than Ten Thousand Dollars ($25,000.00)

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray the Court as follows:

1. That Plaintiffs have and recover of Defendants, jointly and severally, an amount greater than Twenty-Five Thousand Dollars ($25,000.00) for personal injuries of Plaintiffs.

2. That Plaintiffs have and recover of Defendants, jointly and severally, an amount greater than Twenty-Five Thousand Dollars ($25,000.00) for punitive and exemplary damages.

3. That Plaintiffs recover from Defendants jointly and severally, the costs of this action and reasonable attorney's fees to the fullest extent allowed by North Carolina and United States law;

4. That Plaintiffs recover of Defendants interest in any recovery hereunder, from the date of the filing of this action, until paid, as provided by law, in an amount no less than 8% per annum;

5. That Plaintiffs have a trial by jury on all issues so triable; and

6. That Plaintiffs be granted all other relief, both legal and equitable, which the Court deems just and proper.

**[The Remainder of this Page is Intentionally Left Blank]**

This the 31st day of January, 2014.

        s/ J. Bradley Smith
        J. Bradley Smith
        N.C. Bar No.: 32931
        ARNOLD & SMITH, PLLC
        The Historic John Price Carr House
        200 North McDowell Street
        Charlotte, North Carolina 28204
        Telephone:    704.370.2828
        Facsimile:     704.370.2202
        Email:          jbs@arnoldsmithlaw.com